IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

PAMELA CATALANO,                        :

    Plaintiff,                       Case No. 3:23-cv-289

v.                                      :       Judge Walter H. Rice

PNC BANK, N.A., *et al.*,

    Defendants.                      :

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS PNC BANK, N.A., AND AMY LASKODY
(DOC. #28); JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND
AGAINST PLAINTIFF PAMELA CATALANO; TERMINATION ENTRY

---

Before the Court is the Motion for Summary Judgment of Defendants PNC

Bank, N.A. ("PNC"), and Amy Laskody ("Laskody"). (Doc. #28). For the reasons

set forth below, the Motion is SUSTAINED.

I.    **Factual Background and Procedural History**

At the summary judgment stage, the facts are viewed and ambiguities are

resolved in the light most favorable to Plaintiff as the non-moving party.

*Washington v. Newsom*, 977 F.2d 991, 996 (6th Cir. 1992). Plaintiff began her

employment with what is now PNC in 2003 and, beginning in October 2020,

Plaintiff served as Branch Manager, Sr., also known as Branch Manager 2

("Manager") at PNC's branch in Troy, Ohio ("Branch"). Part of her responsibilities

as Manager was to supervise branch employees, including one Lori "Jill" Brown, a Branch Banker. (Memo. in Support, Doc. #28-1, PAGEID 246; Pltf. Dep., Doc. #28-2, PAGEID 261, 264-65, 281). Despite it being well-known at the Branch that Plaintiff is an Apostolic Pentecostal, Brown made several comments to Plaintiff that Plaintiff perceived as derogatory and hostile. Specifically, Brown called Plaintiff a "holy roller," and encouraged her to "let her hair down" and "get drunk," despite both of those activities being contrary to Plaintiff's beliefs and practices. (Memo. in Opp., Doc. #29, PAGEID 528, citing Doc. #28-2, PAGEID 269-70, 271-72). Another Branch employee, Carey Simons, told Plaintiff that Brown was "out for" Plaintiff, despite Plaintiff being Brown's supervisor. (Id., citing Doc. #28-2, PAGEID 270). As Brown's supervisor, Plaintiff put her on a performance improvement plan ("PIP"), a step which, if Brown failed to better her performance, could have led to her termination.[1] (Doc. #28-2, PAGEID 290).

On October 14, 2021, Brown called PNC's Employee Relations Information Center ("ERIC") hotline and stated that Plaintiff had instructed Brown to violate several PNC policies, including directing Brown to update a customer's personal information without the customer being physically present at the branch and providing identification, in contravention of PNC's "Know Your Customer" ("KYC") policy. (A. Laskody Decl., Doc. #28-3, PAGEID 378 ¶¶ 21, 24-25; Doc. #28-4, PAGEID 468-69). PNC assigned Laskody to investigate the alleged violation,

---

[1] The details of the PIP are not discussed by either party. However, neither party claims that the PIP is related to comments made by Brown to Plaintiff, or the personal interactions between Brown and Plaintiff.

and subsequently partnered Laskody with Anti-Money Laundering Investigator Kelly Parker. (*Id.* at ¶ 22; Doc. #28-4, PAGEID 465-66, 468-69, 479, 489). On January 7, 2022, Laskody and Parker interviewed Plaintiff, who initially had to "rack her brain" to remember anything about the incident in question. (Doc. #29, PAGEID 528-29, citing Doc. #28-2, PAGEID 281; K. Parker Dep., Doc. #28-5, PAGEID 513). Plaintiff concedes that she knew of PNC's policies—including that instructing an employee to commit a dishonest act is a valid ground for termination—but felt as though Laskody forced her "to answer questions during the interview and [was] trying to 'coerce' her into responding to questions in a certain way." (Doc. #28-1, PAGEID 243, quoting Doc. #28-2, PAGEID 288; citing Doc. #28-2, PAGEID 274, 275, 277-78, 279, 289-90). Although branch surveillance videos were inconclusive as to whether Plaintiff or Brown engaged in the KYC violation, Laskody concluded that Plaintiff had engaged in dishonest practice and placed her on administrative leave. (*Id.* at PAGEID 239-40, citing Doc. #28-3, PAGEID 378, ¶¶ 26-27, 29; Doc. #28-4, PAGEID 487, 491-92; Doc. #28-5, PAGEID 513).

After placing Plaintiff on paid leave, Laskody and Parker continued to investigate. During this time, on January 11, 2022, Plaintiff told Laskody for the first time about Brown's derogatory comments, complaining that she was harassed by Brown due to her religious beliefs, and that Brown, out of loyalty to her former supervisor, had retaliated against Plaintiff by complaining about Plaintiff through ERIC. (Doc. #28-1, PAGEID 241, citing Doc. #28-3, PAGEID 379, ¶¶

3

38-39; Doc. #28-4, PAGEID 473-76). However, in her earlier complaint to Laskody, Plaintiff did not inform the latter of her religious denomination, and Laskody did not know that Plaintiff is an Apostolic Pentecostal. (*Id.* at PAGEID 242, citing Doc. #28-2, PAGEID 274; Doc. #28-4, PAGEID 475, 488-89).

Despite the inconclusive video evidence, Laskody concluded that Brown's complaints that Plaintiff had instructed Brown to be dishonest were true. After consulting with Regional Leader Rosemary Martin, who did not know that Plaintiff had complained to Laskody about Brown's alleged harassment, Laskody "notified Catalano that her employment was being terminated for directing another employee to be dishonest." (Doc. #28-1, PAGEID 240, citing Doc. #28-4, PAGEID 469-71, 482-83). Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC"), alleging that she was "terminated based on religion and in retaliation for protective activity[.]" (Doc. #28-2, PAGEID 293). Plaintiff also charged that "Amy Laskody aided, abetted, compelled, and/or coerced PNC's discriminatory conduct." (*Id.*). The OCRC dismissed her charge, and Plaintiff timely filed her Complaint in the Montgomery County, Ohio, Court of Common Pleas on August 30, 2023. (Doc. #2, PAGEID 53, ¶ 14). Therein, Plaintiff raised claims: of religious discrimination, in violation of OHIO REV. CODE § 4112.02(A) (Claim One) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Claim Two); claims of retaliation, in violation of OHIO REV. CODE § 4112.02(I) (Claim Three) and Title VII (Claim Four); and that Laskody aided and abetted PNC's unlawful conduct, in

violation of OHIO REV. CODE §§ 4112.02(J), 4112.99 (Claim Five). (*Id.* at PAGEID 59-62, ¶¶ 109-141).

On June 2, 2025, Defendants moved for summary judgment on all claims. (Doc. #28). Plaintiff filed a memorandum *contra* (Doc. #29), and Defendants filed a reply. (Doc. #30). The Motion is now ripe for decision.

## II.    Legal Standards

### A.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not

5

sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. FED.R.CIV.P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however,

6

the court may also consider other properly presented materials in the record.
FED.R.CIV.P. 56(c)(3).

## B.    Employment Discrimination

A plaintiff may produce evidence of employment discrimination under the
direct or indirect evidence approach  "[D]irect evidence is that evidence which, if
believed, requires the conclusion that unlawful discrimination was at least a
motivating factor in the employer's actions."  *Jacklyn v. Schering–Plough
Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999).  "Once the plaintiff
has produced credible direct evidence, the burden shifts to the employer to show
that it would have taken the employment action of which the plaintiff complains
even in the absence of discrimination."  *White v. Columbus Metro. Hous. Auth.,*
429 F.3d 232, 238 (6th Cir. 2005).

Plaintiff's claims are based on indirect evidence of religious discrimination
and retaliation by Defendants, meaning that the well-established *McDonnell
Douglas* "burden-shifting" framework applies.  *McDonnell Douglas Corp. v.
Green,* 411 U.S. 792 (1973); *Tepper v. Potter,* 505 F.3d 508, 515-16 (6th Cir. 2007),
*overruled on other grounds by E.E.O.C. v. Abercrombie & Fitch Co.,* 575 U.S. 768
(2015).  Employment discrimination and retaliation claims arising under Ohio Rev.
Code § 4112.02 *et seq.* and relying on indirect evidence of discrimination follow
the same burden-shifting analysis.  *Coryell v. Bank One Trust Co., N.A.,* 101 Ohio
St. 3d 175, 2004-Ohio-723, ¶ 9; *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St. 3d 578, 582
(1996).

7

For religious discrimination, a plaintiff employee must make a *prima facie* showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she is qualified for position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated employees. *Tepper*, 505 F.3d at 515. If the plaintiff makes such a showing, then the burden shifts to the defendant employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action" it undertook. *Id.*, citing *McDonnell Douglas*, 411 U.S. at 802. "If the defendant meets this burden, then the burden shifts back to the plaintiff[,] who must show that the defendant's proffered reason is a pretext for discrimination." *Id.* at 515-16, citing *McDonnell Douglas*, 411 U.S. at 804. However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff *remains at all times with the plaintiff.*" *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (emphasis added).

Pretext may be shown "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (brackets in original), quoting *Burdine*, 450 U.S. at 256, *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the

8

employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "To carry her burden in opposing summary judgment, [a plaintiff] must produce sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." *Id.*; *accord*: *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014), quoting *Chen*, 580 F.3d at 400 ("At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.").

For retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) the defendant employer knew of the activity; (3) the defendant thereafter subjected the plaintiff to an adverse employment action; and (4) there is a causal connection between the protected activity and adverse action. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d at 504. "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). At the summary judgment stage, "all facts must be viewed in the light most favorable to Montell and all reasonable inferences must be made in her favor" with respect to the *prima facie* case. *Montell*, 757 F.3d at 505. The second and third stages of the burden-shifting analysis are the same as those for discrimination. *Montell*, 757 F.3d at 504. As with discrimination, retaliation claims arising under Ohio law and Title VII are analyzed identically using the above burden-shifting framework.

*Moody v. Ohio Dep't of Mental Health & Addiction Servs.*, 2021-Ohio-4578, ¶¶ 35-36, 183 N.E.3d 21 (10th Dist.).

III. **Analysis**

A. **Claims One and Two: Religious Discrimination**

Plaintiff argues that the first three elements of a religious discrimination claim—that she (1) was a member of a protected class (Apostolic Pentecostal); (2) suffered adverse action (termination); and (3) was qualified for position—are not in dispute. (Doc. #29, PAGEID 530-31, citing *Tepper*, 505 F.3d at 515). She further claims that she can meet the fourth element—a similarly-situated employee being treated differently—because Brown and Plaintiff allegedly committed the same KYC violation, but Plaintiff was terminated while Brown was only "coached" for making an inappropriate comment to Plaintiff. (*Id.* at PAGEID 531, citing Doc. #28-4, PAGEID 477). Plaintiff asserts that "[a] jury could find this disparity in treatment, for involvement in the same core incident, sufficient to satisfy the fourth prong, particularly given Brown's documented performance issues and animus towards Catalano." (*Id.*, citing Doc. #28-2, PAGEID 290).

Defendants responds that Plaintiff cannot meet her *prima facie* burden of showing disparate treatment because she has not identified a valid comparator—*i.e.*, another PNC employee accused of directing another employee to be dishonest. (Doc. #28-1, PAGEID 245, citing *Tepper*, 505 F.3d at 517; Doc. #28-2, PAGEID 275). They claim that: because Brown and Plaintiff were employed as Branch Banker and Manager, respectively, they are not similarly situated; and that

10

an employer subjecting a supervisor to greater discipline than a subordinate is a commonly-accepted practice. (*Id.* at PAGEID 245-46, citing *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 328-29 (6th Cir. 2021); Doc. #28-2, PAGEID 264, 281)).

Plaintiff cites no caselaw, and the Court is unaware of any, supporting her position that a subordinate and direct supervisor could be similarly situated, and indeed, such rationale is belied by Sixth Circuit precedent:

> In examining another employee outside the protected class, we consider whether the employee: (1) "dealt with the same supervisor," (2) was "subject to the same standards," and whether they (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Pelcha*, 988 F.3d at 328, quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Plaintiff and Brown fail the first element, as they necessarily have different supervisors. Moreover, there is no dispute that the conduct that could have motivated adverse action against Plaintiff—committing the KYC violation *or* instructing a subordinate such as Brown to do so—is broader than the conduct that could have yielded adverse action against Brown—only committing the KYC violation. Accordingly, Brown is not a similarly-situated employee; because Plaintiff fails to identify another comparator, Claims One and Two fail for that reason alone.

Alternatively, even if Plaintiff had met her *prima facie* burden, Defendants have articulated a legitimate, nondiscriminatory reason for suspending and then terminating Plaintiff as Manager—Laskody concluding, and Martin concurring,

11

that Plaintiff had either committed a KYC violation or instructed Brown to do so, in violation of PNC's Code of Ethics and Fidelity Bonding Policy. (Doc. #28-3, PAGEID 379, ¶¶ 33-37). Termination for fraud or dishonesty has been consistently upheld by the United States Court of Appeals for the Sixth Circuit as a legitimate, nondiscriminatory reason. *See, e.g., Singer v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 284-85 (6th Cir. 2012); *Conley v. City of Findlay*, 266 F. App'x 400, 405 (6th Cir. 2008). Thus, the burden shifts back to Plaintiff to show pretext; to avoid summary judgment, Plaintiff must put forth a genuine factual dispute as to the ultimate question: whether "the employer's explanation was fabricated to conceal an illegal motive." *Chen*, 580 F.3d at 400.

Plaintiff argues that she can cast doubt on Defendants' purported reasons through the first two avenues. *First*, as to factual basis, she asserts that PNC cannot truthfully have removed Plaintiff for instructing Brown to be dishonest when Laskody and Parker's investigation was inconclusive as to who committed the KYC violation. (Doc. #29, PAGEID 533, citing Doc. #28-2, PAGEID 281; Doc. #28-5, PAGEID 513). *Second*, Plaintiff claims that a reasonable trier of fact could infer false motivation from the relatively short time between: Brown's comments to Plaintiff; Simons warning Plaintiff that Brown was "out to get her"; Plaintiff placing Brown on a PIP; Brown's complaints to ERIC; Plaintiff complaining about Brown to Laskody; and Plaintiff's termination. (*Id.* at PAGEID 533-34).

Defendant replies that the termination decision had ample factual basis, as Laskody relied upon: Plaintiff's statement that she could not remember whether

12

Brown or she actually inputted the information without the customer present; Brown's statements that Plaintiff instructed her to input the information; Laskody's independent investigation; and her conclusions from that investigation in deciding, with Martin, to terminate Plaintiff. (Doc. #30, PAGEID 544, citing Doc. #28-2, PAGEID 279, 289-90; Doc. #28-4, PAGEID 466). Indeed, the incident report prepared by Laskody (Doc. #28-3, PAGEID 428-42) contained detailed summaries of her interviews with Brown and Plaintiff, including Laskody's recitation of Plaintiff's statement that Plaintiff either inputted the customer credit card and driver license information without the customer present or directed Brown to do so, both PNC policy violations. (*Id.* at PAGEID 431-32). From those statements and other evidence, Laskody reasonably concluded that Plaintiff had either engaged in dishonest acts or instructed Brown to be dishonest. (*Id.* at PAGEID 432). As Laskody "reasonably and honestly relie[d] on particularized facts in making an employment decision, [Defendants are] entitled to summary judgment on pretext even if [Laskody's] conclusion [were] later shown to be mistaken, foolish, trivial, or baseless." *Chen*, 580 F.3d at 401 (internal quotation marks and citation omitted).

As for the false motivation argument based on temporal proximity, Defendant correctly notes that Simons's statement is hearsay (Doc. #30, PAGEID 545), and Plaintiff has not offered any reason why it satisfies exclusion or exception to the prohibition on hearsay evidence. FED.R.EVID. 801, 803, 804. Nor did Simons recapitulate that statement in a declaration or deposition. Thus, the

Court may not consider any statement by Simons in connection with this Motion. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997), citing FED.R.CIV.P. 56(e). Moreover, while Plaintiff had placed Brown on a PIP, there is no indication she or Brown informed Laskody of that fact. Finally, Laskody had already placed Plaintiff on administrative leave—for the infraction that ultimately led to Plaintiff's termination—before Plaintiff told her about Brown's derogatory comments, and, importantly, there is no evidence that Martin was ever aware of Plaintiff's complaint to Laskody. Thus, any temporal proximity by itself is insufficient to show that Defendants were not actually motivated by their proffered reason to terminate Plaintiff. As Plaintiff offers no other argument for pretext, Defendants' Motion is sustained as to Claims One and Two for that reason as well.

**B.    Claims Three and Four: Retaliation**

Plaintiff argues that the temporal proximity among: her protected activity of complaining to Laskody on January 11, 2022; Laskody concluding that Plaintiff's allegations were unfounded on February 10, 2022; and Plaintiff's termination on February 15, 2022, is sufficient to infer a causal connection between the protected activity and adverse action. Thus, Plaintiff argues, she has met her *prima facie* burden. (Doc. #29, PAGEID 535, citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); Doc. #28-2, PAGEID 276; Doc. #28-4, PAGEID 472, 477).

However, Plaintiff has not presented evidence of the but-for causation required to meet the fourth element of a *prima facie* claim. *Univ. of Texas S.W.*

*Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). As discussed above, Laskody had already suspended Plaintiff for dishonesty before Plaintiff engaged in protected activity, and PNC's policies—which are undisputed and were known to Plaintiff—dictated that an employee engaged in dishonesty could not qualify for bond coverage, and that being bonded was a condition of employment at PNC. Also, Laskody, in an undisputed statement, averred that PNC regularly terminates employees who have lost bond coverage. (Doc. #30, PAGEID 551-52, citing *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 898 (3d Cir. 2007); Doc. #28-3, PAGEID 377, 378, 379 ¶¶ 10, 26-28, 35; Doc. #28-4, PAGEID 470-71, 482; Doc. #28-5, PAGEID 514-15)). Finally, there is no evidence that Martin had any knowledge of Plaintiff's complaint to Laskody, meaning that there is no evidence that Martin's adverse action was in retaliation for Plaintiff's protected activity. *Montell*, 757 F.3d at 504; (Doc. #30, PAGEID 551, citing *Thompson v. Potter*, No. 2:04-cv-291, 2006 WL 783395, *18 (S.D. Ohio Mar. 27, 2006) (Marbley, J.)). As Plaintiff has failed to show a but-for causal link between her protected activity and the adverse action, she has failed to meet her *prima facie* burden for retaliation claims.

Moreover, even if Plaintiff had met that burden, she cannot make the requisite showing of pretext. As discussed above, Defendants' stated reason for termination—instructing Brown to be dishonest—is a legitimate, nondiscriminatory reason, and one that has a factual basis. As Laskody had already initiated the disciplinary process when Plaintiff complained to her about Brown's comments, and Martin was unaware of Plaintiff's protected activity, there

15

is no evidence that the stated reason is a false rationale.  Finally, the undisputed

facts that: Plaintiff's dishonesty would cause her to lose bonding coverage, such

coverage is a prerequisite for employment at PNC, and PNC has terminated

employees regularly who are not bonded (Doc. #28-3, PAGEID 377, 379, ¶¶ 10, 33-

35), mean that the proffered reason was sufficient for the adverse action.  *Chen*,

580 F.3d at 400.  As Plaintiff cannot demonstrate pretext, the Motion must be

sustained as to Claims Three and Four.

### C.    Claim Five: Aiding and Abetting

Under Ohio law, an individual may not:

> [A]id, abet, incite, compel, or coerce the doing of any act declared by
> this section to be an unlawful discriminatory practice, to obstruct or
> prevent any person from complying with this chapter or any order
> issued under it, or to attempt directly or indirectly to commit any act
> declared by this section to be an unlawful discriminatory practice.

OHIO REV. CODE § 4112.02(J).  Aiding and abetting is, thus, a derivative claim; if "a

defendant is entitled to summary judgment on the underlying discrimination and

retaliation claims, 'the court must also necessarily grant summary judgment on

the claim of aiding and abetting those claims.'"  *Martcheva v. Dayton Bd. of Educ.*,

2021-Ohio 3524, ¶ 75, 179 N.E.3d 687 (2d Dist.), quoting *Weinrauch v. Sherwin-*

*Williams Co.*, No. 1:18-cv-01696, 2019 WL 3007031, \*14 (N.D. Ohio Jul. 10, 2019)).

As Claims One through Four fail as matters of law, the Court must sustain

Defendants' Motion as to Claim Five as well.

### D. Harassment and Hostile Work Environment Claim

Although not raised as a distinct claim, in the Complaint, Plaintiff alleged that Brown's "comments created a hostile work environment based on religion" (Doc. #2, PAGEID 55, ¶ 44), and that the comments were severe and pervasive, and violated PNC's anti-harassment policy. (*Id.*, ¶¶ 32-35, 39-43). Defendants raised the affirmative defense that "[t]o the extent Plaintiff failed to exhaust her administrative remedies and/or failed to comply with any procedural prerequisites before bringing her claims before the Court, such claims are barred." (Answer, Doc. #6, PAGEID 109). In the Motion, Defendants argue that any hostile work environment claim is barred as a matter of law, because Plaintiff both failed to exhaust such a claim through her OCRC charge and failed to plead the claim in her Complaint. (Doc. #28, PAGEID 251, citing *Tucker v. Union of Needletrades, Indus. and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)). Plaintiff responds that "whether the harassment claim is outside the scope of an EEOC charge is a fact-specific inquiry into whether it could be reasonably expected to grow out of the charge of discrimination. Plaintiff's charge alleged termination based on religion, which encompasses underlying discriminatory animus that could manifest as harassment." (Doc. #29, PAGEID 534).

However, in her memorandum *contra*, Plaintiff does not attach or even refer to the charge or the OCRC's right-to-sue letter. During her deposition, Plaintiff reviewed the charge document and answered in the affirmative that "in the narrative portion, it says you believe that you were terminated based on religion

17

and in retaliation for protect[ed] activity, and you believe that Amy Laskody aided, abetted, compelled, and/or coerced PNC's discriminatory conduct." (Doc. #28-2, PAGEID 292-93). When asked "[h]ave we discussed all the ways you believe you were discriminated against based on your religion?" and "have we discussed all of the claims you are bringing against PNC [and Laskody]?" Plaintiff responded in the affirmative. (*Id.* at PAGEID 293). There is no evidence that harassment or hostile work environment was mentioned in Plaintiff's charge, and it does not appear from the deposition that Plaintiff intended to bring such a claim. Nor can such a claim reasonably be expected to grow out of the charge, which arose from allegedly discriminatory and retaliatory treatment by *Laskody and Martin*. Meanwhile, the comments that Plaintiff claims were harassing and created a hostile work environment (Doc. #29, PAGEID 534) were made by *Brown*. Laskody, in fact, was not aware of those comments until fifteen months after they were made. (Doc. #28-2, PAGEID 276). In sum, a reasonable trier of fact may not reasonably infer, from the evidence of record, that a claim of harassment or hostile work environment logically arose from Plaintiff's charge or other claims in the Complaint. Consequently, such a claim is barred for failure to exhaust and failure to plead, and Brown's alleged harassment may not serve as the basis for relief.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment

(Doc. #28) is SUSTAINED.  Judgment shall enter in favor of Defendants and

against Plaintiff on all claims.

The captioned case is hereby ordered terminated upon the docket records

of the United States District Court for the Southern District of Ohio, Western

Division, at Dayton.


IT IS SO ORDERED.

Date: 8/4/2025

Walter H. Rice

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

19